**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID OLIVER, | ) | CASE NO. 4:23-CV-01092-PAB |
| | ) | |
| Petitioner, | ) | |
| | ) | U.S. DISTRICT JUDGE |
| | ) | PAMELA A. BARKER |
| v. | ) | |
| | ) | |
| | ) | U.S. MAGISTRATE JUDGE |
| WARDEN TIM MCCONAHAY, | ) | JENNIFER DOWDELL ARMSTRONG |
| | ) | |
| Respondent, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |

## I.      INTRODUCTION

Petitioner, David Oliver ("Mr. Oliver"), seeks a writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 1).  On December 15, 2016, Mr. Oliver was indicted on seven counts: (1) aggravated murder with prior calculation and design; (2) aggravated murder during an aggravated robbery; (3) aggravated murder during an aggravated burglary; (4) aggravated robbery; (5) aggravated burglary; (6) tampering with evidence; and (7) having a firearm specification while under disability, as a result of two 2014 burglary convictions.  Firearm specifications accompanied all counts except Count 6.

Mr. Oliver subsequently entered a written plea agreement on August 16, 2019, where he pled guilty to an amended charge of murder in Count 1, having weapons while under disability in Count 7, and a firearm specification on both Counts 1 and 7. The state dismissed Counts 2 through 6.  The parties jointly agreed upon an aggregate sentencing recommendation of 21 years to life. After accepting Mr. Oliver's guilty plea following a lengthy colloquy, the trial court imposed the agreed-upon sentence of 21 years to life.

1

Mr. Oliver's petition asserts a single ground for relief related to whether he knowingly, intelligently, and voluntarily pled guilty at the change of plea hearing. This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Mr. Oliver's petition. (ECF No. 3). For the reasons below, I RECOMMEND that the Court DISMISS and/or DENY Mr. Oliver's petition. I further recommend that the Court not grant Mr. Oliver a certificate of appealability.  Finally, I recommend that Harold May, the current Warden of Mansfield Correctional Institution, be substituted for Tim McConahay as the Respondent.[1]

## I.    RELEVANT FACTUAL BACKGROUND

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Spagnola v. Horton*, No. 17-1462, 2017 WL 8948745, at *2 (6th Cir. 2017). The Ohio Court of Appeals for the Seventh District set forth these facts  on direct appeal:

> {¶2} On September 20, 2016, Andre Harrison was shot and killed in his Youngstown residence. According to the prosecution, the police responded to a call of a shot fired at 5:29 p.m. and found the victim dead with a single gunshot wound to the chest. Neighbors reported seeing two young black males running from the scene. (Sent.Tr. 5). The house was "trashed" and it was apparent the intruders took interior video surveillance cameras and a corresponding digital video recorder (DVR) from inside the residence; an outdoor camera near the driveway was not taken. Later that day, the victim's house was "burnt down" by arson. (Sent.Tr. 6).
>
> {¶3} According to a defense filing in the case, the stolen DVR was recovered by the Youngstown Police Department on September 28, 2016 and sent to the state's Bureau of Criminal Investigation (BCI) for data recovery. BCI recovered video from the DVR and transferred it to a DVD, which the police department received on December 1, 2016. The police released scenes from the video to the news stations to generate community assistance with identification. (5/31/17 Def. Mot.).

---

[1] Tim McConahay was previously the Warden of Mansfield Correctional Institution, where Mr. Oliver is incarcerated. Harold May, however, is now Warden of that facility. *See* https://drc.ohio.gov/about/facilities/mansfield-correctional (last visited on Nov. 18, 2024.) Thus, Warden Harold May should be substituted as the proper respondent. *See* 28 U.S.C. § 2243 ("The writ ... shall be directed to the person having custody of the person detained."); Fed. R. Civ. P. 25(d) (providing that "when a public officer who is a party in an official capacity ... ceases to hold office while the action is pending[,]" "[t]he officer's successor is automatically substituted as a party.").

{¶4} The police were then able to identify Appellant as the shooter and Jalon Allen as the accomplice. Jalon Allen gave a statement to police saying he did not shoot the victim or commit the arson. From the video, it appeared the "motive was to rob the victim and steal items from inside the house." (Sent.Tr. 6).

{¶5} On December 15, 2016, Appellant was indicted on seven counts: (1) aggravated murder with prior calculation and design; (2) aggravated murder during an aggravated robbery; (3) aggravated murder during an aggravated burglary; (4) aggravated robbery; (5) aggravated burglary; (6) tampering with evidence; and (7) having a weapon while under disability (as a result of two 2014 burglary convictions). Firearm specifications accompanied all counts except the sixth. Jalon Allen was jointly indicted on all counts except the seventh.

{¶6} On August 16, 2019, Appellant entered a plea agreement wherein he pled guilty to an amended charge of murder, the charge of having a weapon while under disability, and a firearm specification. The state agreed to dismiss the other charges. The jointly agreed upon sentencing recommendation was 15 years to life for murder, plus three years for the firearm specification, followed by a consecutive sentence of three years for having a weapon while under disability, for a total of 21 years to life. A presentence investigation was waived, but the state asked to hold sentencing until after the co-defendant's trial, which was to begin the next week. (Plea Tr. 3).

{¶7} Sentencing proceeded on August 22, 2019. The defense noted that Appellant's acceptance of responsibility helped the state settle the co-defendant's case. The trial court imposed the agreed-upon sentence at the hearing and in the August 23, 2019 sentencing entry. The within appeal followed.

*State v. Oliver,* 7th Dist. Mahoning No. 20MA28, 159 N.E.3d 751, 753-54, 2021-Ohio-1247, ¶¶ 2-7 (Oct. 8, 2021).

## II.  RELEVANT PROCEDURAL HISTORY

### A.  Trial Court Proceedings

On December 15, 2016, the Mahoning County grand jury issued an indictment charging Mr. Oliver with seven counts: (1) aggravated murder with prior calculation and design; (2) aggravated murder during an aggravated robbery; (3) aggravated murder during an aggravated burglary; (4) aggravated robbery; (5) aggravated burglary; (6) tampering with evidence; and (7) having a weapon while under disability (as a result of two 2014 burglary convictions). (ECF No.

5-1, Exhibit 1.)  Firearm specifications accompanied all counts except the tampering with evidence count.  (*Id.*)  Mr. Oliver pled not guilty to all charges. (*Id.,* Exhibit 2.)

At a hearing on August 20, 2019, the State amended Count 1 from aggravated murder to murder.  Mr. Oliver, through counsel, then withdrew his original plea of not guilty and entered a plea of guilty to the amended Count One (murder) and Count Seven (having weapons while under disability), along with the firearm specifications accompanying those counts. (*Id.,* Exhibit 3; *see also* ECF No. 8-2, PageID # 160-176.)  The State and defense recommended an agreed-upon sentence of 21 years to life in prison.  (*Id.*)  After a lengthy colloquy, the trial court accepted Mr. Oliver's guilty plea and found him guilty as charged. (ECF No. 8-1, Exhibit 4; ECF No. 8-2, PageID # 160-176.)

On August 22, 2019, the trial court conducted a sentencing hearing.  A member of the victim's family spoke at the hearing about the pain she and her family sustained because of the murder.  (ECF No. 8-2, PageID # 180-82.)  She concluded by saying:

> So at the end of the day I asked and I pray for both families involved [the victim's and Mr. Oliver's] and everybody find peace and closure after today.  Whatever time this court decides to give him, I will not question it in any kind of way or any decision you make today.

(*Id.* at PageID # 181-82.) Prior to the imposition of his sentence, Mr. Oliver apologized to the victim's family:

> I want to tell the victim I'm very remorseful.  I really mean it.  And it was never intended to go that way.  And I hope now they can find some comfort in my sentence in knowing justice is served.  Sorry.

(*Id.* at PageID # 186.)  The trial court then sentenced Mr. Oliver to the agreed-upon aggregate sentence of 21 years to life. (ECF No. 8-1, Exhibit 5; ECF No. 8-2, PageID # 178-193.)

**B.  Direct Appeal**

On March 2, 2020, Mr. Oliver filed notice of appeal and motion for leave to file delayed

appeal of the judgment of conviction to the Seventh District Court of Appeals for Mahoning

County. (ECF No. 8-1, Exhibits 6, 7.)  He asserted that his request for assistance from the public

defender's office garnered no response. (*Id.*) The appeals court granted the delayed appeal. (ECF

No. 8-1, Exhibit 8.)

In his merit brief, Mr. Oliver raised a single assignment of error:

Nodding one's head is not a sufficient response to knowingly, intelligently and voluntarily
make a complete admission of one's guilt in this murder case and other serious felonies in
this case.

(ECF No. 8-1, Exhibit 9.)  On March 31, 2021, the Seventh District Court of Appeals overruled

the assignment of error and affirmed the trial court's judgment. (*Id.,* Exhibit 11); *see also State v.*

*Oliver,* 7th Dist. Mahoning No. 20MA28, 159 N.E.3d 751, 753-54, 2021-Ohio-1247, ¶¶ 2-7 (Oct.

8, 2021.

On April 27, 2022, Mr. Oliver, acting pro se, filed a notice of appeal and a motion for leave

to file delayed appeal to the Ohio Supreme Court. (*Id.,* Exhibits 12, 13.) The Ohio Supreme Court

granted the delayed appeal.  (*Id.,* Exhibit 14.)  On June 15, 2022, the Ohio Supreme Court

dismissed the case for failure to prosecute. (*Id.*, Exhibit 15.)

**C.  Federal Habeas Corpus**

Mr. Oliver, acting pro se, filed his federal habeas petition on May 8, 2023. (ECF No. 1.)

His petition raises a single ground for relief:[2]

**GROUND ONE**: The Appellate Court erred when it did not find David Oliver guilty plea
was obtained in violation of the fifth and fourteenth amendment of the United States
Constitution; Article 1, second 10 of the Ohio Constitution; and Crim.R. 11(C) when it
found that a "head Nod" was sufficient to make a complete admission of guilt.

---

[2] Mr. Oliver's ground for relief is set forth verbatim.

5

**SUPPORTING FACTS**:  It is uncertain if David Oliver made a "complete admission to these charges."  At the plea agreement hearing, the judge directly addressed the defendant. The court asked David if he understood, if David would make a plea of guilty, would David be making a complete admission to these charges.  David Oliver made no audible response. David only nodded his head.  It is uncertain if David made any affirmative response to the judge's question.

**THE COURT:** Do you understand that if you make a plea of guilty here today you're making a compere admission to these charges?

**THE DEFENDANT:** (Nods Head).  Transcript, Plea hearing, p.7, line 4-7.

The defendant did not give a clear answer.  The trial judge did not insist on a verbal answer, let alone a clear verbal response.  Plea Hearing: p 7 lines 4.

Immediately prior to the "Nods Head' reaction of David, the judge asked about "elements" that the State had to prove.  David interrupted the court and gave an answer before the judge was finished with the judge's question.  SEE, Plea Agreement, p6, lines 11-19.

Was David trying to tell the judge that he was not "making complete admission to these charges"?  Was David trying to communicate to the judge that he, David, did not understand the question?

This question and answer from the judge is crucial because the judge needs to know if the defendant is "making a complete admission to these charges."  When that question, the defendant-appellant did not verbally answer.  Instead, David Oliver "(Nods head."

The defendant did not give a clear answer, nor a verbal answer.  The trial judge did not insist on a verbal answer and went onto questioning David Oliver.  Plea Hearing: p7 lines 4-7.

The Warden filed a return of writ on August 30, 2023 (ECF No. 5.)  On June 27, 2024, I

issued the following order:

A review of the Court's docket reveals that the Warden's return of writ was filed on 8/30/2023 (ECF No. 5). Petitioner has not filed a traverse to the return of writ. The Court hereby establishes a final deadline of 8/5/2024 by which the Petitioner must file a traverse, should he wish to respond to the Warden's arguments. If a traverse is not filed on or before this date, the Court will proceed to consider the writ.

(*See* ECF non-document order dated June 27, 2024).  To date, Mr. Oliver has not filed a traverse,

and the time to do so expired over three months ago.

6

### III.    STANDARDS OF REVIEW AND GOVERNING LAW

#### A. __Jurisdiction__

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d).

The Mahoning Court of Common Pleas sentenced Mr. Oliver, and the Court takes judicial notice that Mahoning County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Oliver's § 2254 petition.

#### B.    __Exhaustion and Procedural Default__

Under the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits.  28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982).  This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition."  *Engle v. Isaac*, 456 U.S.

107, 125 n.28 (1982).  It "does not require pursuit of a state remedy where such a pursuit is clearly futile."  *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806.  In determining whether there has been a procedural default, the federal court looks to the last explained state-court judgment.  *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).  A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

If a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.    Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all."  *Glaze v. Morgan*, No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)).  Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)).  Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition.  *Id.* (quotation omitted).  Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.    AEDPA Standard of Review

AEDPA provides in relevant part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

   (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

9

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## IV.    ANALYSIS

### A. Mr. Oliver's Ground One claim fails

#### 1. Ground One is procedurally defaulted

Mr. Oliver argues in his Ground One claim that the Seventh District Court of Appeals erred when it held that a "head Nod" was sufficient to make a complete admission of guilt. The Warden correctly construes this argument to mean that Mr. Oliver's plea was not knowing and voluntarily. And the Warden argues that this claim is procedurally defaulted because Mr. Oliver failed to raise it to the Ohio Supreme Court for review. I agree.

Before seeking a writ of habeas corpus in federal court, a petitioner must properly exhaust his state court remedies by fairly presenting all constitutional claims to all levels of the state courts. A petitioner may procedurally default his constitutional claim by failing to present the claim to all appropriate state courts prior to that through the state's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at 847. Ohio's "ordinary appellate review process" means a defendant must timely present his on-the-record constitutional claim to the trial court, court of appeals, and the Ohio Supreme Court on direct review. *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003). While Mr. Oliver raised this argument to the Seventh District Court of Appeals, he failed to raise it to the Ohio Supreme Court. Specifically, he did not file a timely memorandum in support of jurisdiction, and the Ohio Supreme Court dismissed the case for lack of prosecution. (ECF No. 8-1, Exhibit 14.)

To excuse his procedural default, Mr. Oliver must establish cause and prejudice. Mr. Oliver offers no explanation regarding any cause that would explain his failure to raise his claim at every level of the ordinary appellate review process. And because Mr. Oliver fails to demonstrate cause, I need not consider whether there was actual prejudice. *Matthews v. Ishee*, 486

12

F.3d 883, 891 (6th Cir. 2007) (finding that the court need not engage in an actual prejudice analysis where the habeas petitioner fails to establish cause).

Nor does Mr. Oliver establish actual innocence because he presents no new, reliable evidence demonstrating actual innocence. *Schlup*, 513 U.S. at 324. Indeed, Mr. Oliver pled guilty to murder and having weapons while under disability and has not suggested anywhere in his petition that he is actually innocent. He also apologized to the victim's family and expressed remorse at his sentencing hearing. And as noted above, Mr. Oliver did not file a traverse and did not respond to the Warden's procedural default argument, much less advance an actual innocence claim. Accordingly, I recommend that the Court deny and/or dismiss Mr. Oliver's Ground One claim because it is procedurally defaulted.

### 2. Ground One fails on the merits

Mr. Oliver asserts in his Ground One claim that his plea was not knowingly, voluntarily, and intelligently given because a "head nod" was insufficient to make a complete admission of guilt. The Warden argues that Mr. Oliver's nod to the trial court was in response to only one of many questions posed by the trial court to Mr. Oliver during his change of plea hearing, and there is ample evidence from the record and case law that Mr. Oliver's nonverbal reply to the trial court was sufficient to show his agreement to the question posed by the trial court. Thus, the Warden maintains that the state appellate court's reasonable decision rejecting this ground is entitled to AEDPA deference. I agree.

"[G]uilty pleas 'not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th Cir. 2009) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). The validity of the plea must be determined from the "totality of the circumstances."

13

*Abdus-Samad v. Bell*, 420 F.3d 614, 631 (6th Cir. 2005) (citing Brady, 397 U.S. at 747, 749). When a habeas petitioner challenges the validity of his plea, "the state generally satisfies its burden [to show that the plea was voluntary and intelligent] by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The state court's factual finding that the plea was proper is accorded a presumption of correctness unless the transcript is inadequate to show that the plea was voluntary and intelligent. *Id.* at 326-327; *see* U.S.C. § 2254 (e)(1).

In rejecting the same argument that Mr. Oliver advances here, the Seventh District Court of Appeals found that Mr. Oliver's plea was voluntary and intelligent:

{¶8} Appellant's sole assignment of error alleges:

"Nodding one's head is not a sufficient response to knowingly, intelligently and voluntarily make a complete admission of one's guilt in this murder case and other serious felonies in this case."

{¶9} A defendant's decision to enter a plea must be knowing, intelligent, and voluntary. *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 10. By providing the procedure a trial court is to use when accepting a guilty plea, Crim.R. 11 allows a reviewing court to ensure the plea has these qualities. *Id.* at ¶ 10-11.

{¶10} Crim.R. 11 initially states: "(B) Effect of Guilty or No Contest Pleas. With reference to the offense or offenses to which the plea is entered: (1) The plea of guilty is a complete admission of the defendant's guilt." Crim.R. 11(B)(1). Another effect of the guilty plea is listed under (B)(3), which says when the plea is accepted, the court shall proceed with sentencing under Crim. R. 32. Crim.R. 11(B)(3). See also Crim.R. 32(A) ("Sentence shall be imposed without unnecessary delay," but bail or commitment can be utilized pending sentencing).

{¶11} Crim.R. 11 then provides, the court shall not accept a guilty plea in a felony case "without first addressing the defendant personally * * * (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence." Crim.R. 11(C)(2)(b).

{¶12} Subdivision (C)(2)(b) involves non-constitutional rights, as opposed to the constitutional rights listed in subdivision (C)(2)(c). A failure with regards to a constitutional right does not require a showing of prejudice in order to invalidate the plea.

14

*Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286 at ¶ 14. However, a failure with regards to a non-constitutional right requires a showing of prejudice, unless the trial court completely failed to comply with the advisement. *Id.* at ¶ 14-16.

{¶13} To show prejudice, the defendant must demonstrate the plea would not have been made but for the court's failure. *Id*. at ¶ 16, citing State v. Nero, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Prejudice must be demonstrated on the face of the record. *Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286 at ¶ 24.

{¶14} There is no dispute that the trial court addressed the defendant personally and informed him of every item listed in Crim.R. 11(C)(2)(a)-(c), including that the guilty plea is a complete admission of the charges. Appellant verbally responded to indicate that he understood the court's advisement after every item except one.

{¶15} Specifically, Appellant's response to the court's inquiry on his understanding of the first part of Crim.R. 11(C)(2)(b) was recorded by the court reporter as a nodded response unaccompanied by words. Pertinent to subdivision (C)(2)(b), the transcript reads:

> THE COURT: Do you understand that if you make a plea of guilty here today you're making a complete admission to these charges?

> THE DEFENDANT: (Nods head.)

> THE COURT: And although we indicated that there's going to be a separate sentencing date we can proceed immediately to sentencing today; do you understand that?

> THE DEFENDANT: Yes.

(Plea Tr. 7).

{¶16} Appellant notes the trial court could have instructed him to answer out loud, and he cites cases to illustrate how trial courts have instructed nodding defendants to verbalize answers. Appellant also provides instances of court reporters describing the nodding they observed, such as "nodding in the affirmative" or "nodded his head yes." He points to the facts of these cases as examples; none of the cited cases contained arguments on whether a court reporter's description was sufficient to show the nod indicated an affirmative answer.

{¶17} In researching the matter, we notice the Sixth District had a case where the appellant argued his plea was not made knowingly, intelligently, and voluntarily as he nodded instead of orally answering the court's questions on a constitutional right and on the maximum penalty. The appellate court stated, "there is no requirement that the appellant orally indicate to the court his understanding and agreement with the court's statements." *State v. Bannister*, 6th Dist. Lucas No. L-88-052, 1989 WL 14749 (Feb. 24, 1989). Still, in that case, the court reporter may have descriptively labeled the nod as the court found: "An

15

affirmative nod, noted by the court reporter in the transcript of proceedings, is sufficient to establish that the appellant understood and agreed with the court's statements." *Id.*

{¶18} Appellant argues the record does not show his head nod was performed in an affirmative manner because the court did not insist he speak his answer or announce for the record that the defendant was nodding his head affirmatively and because the court reporter did not describe her observation "Nods head" by adding "affirmatively" or a similar descriptor.

{¶19} Initially, we note the word "nod" when used in the context of replying to a question typically refers to the act of moving one's head to show one is replying in the affirmative. For instance, mcmillandictionary.com provides a common definition of the verb nod: "to move your head first downward and then upward, to answer 'Yes' to a question or to show that you agree, approve, or understand." In Google's web browser, the dictionary search bar (furnished by Oxford Languages) provides a similar definition of nod: "lower and raise one's head slightly and briefly, especially in greeting, assent, or understanding, or to give someone a signal." It is not common to use the term "Nods head" to mean the opposite of an affirmation or to indicate an expression of confusion or uncertainty.

{¶20} We also note that immediately after Appellant nodded, the court continued with the second half of the sentence contained in Crim.R. 11(C)(2)(b): "And * * * we can proceed immediately to sentencing today; do you understand that?" (Plea Tr. 7). Appellant said, "Yes." Both the guilty plea as a complete admission and the court's ability to proceed to sentencing are defined as part of the "effect of the guilty plea." Crim.R. 11(B)(1),(3). It is possible the trial court was combining its recitation of both parts of the sentence within the subdivision, and Appellant was answering verbally when the entire question was complete.

{¶21} Notably, a plea is not invalid merely because the court does not stop and inquire after the explanation of each right. *State v. Ballard*, 66 Ohio St.2d 473, 479, 423 N.E.2d 115 (1981). This was true even in a case involving the advisement on constitutional rights, whereas here we are discussing a non-constitutional (and non-complex) right. *See id.* (although it is "best" to stop and inquire after each constitutional right, "the failure to so proceed will not necessarily invalidate a plea").

{¶22} Our review of the totality of the circumstances supports the state's position that Appellant understood the effect of his guilty plea after he nodded his head when the court asked if he understood that a guilty plea is a complete admission to the amended charges and that Appellant was not prejudiced in any event. The case had been pending against Appellant for over 2.5 years. He had multiple attorneys prior to the one representing him for the final year and the plea. There were multiple plea negotiating sessions. Counsel disclosed that he spoke to Appellant for two hours the day before the plea and an hour the day before that about the case and the plea. (Plea Tr. 3).

{¶23} At the beginning of the plea hearing, the court asked if it was Appellant's intent to withdraw his former plea of not guilty to the charges in the indictment and enter a plea of guilty to the amended charges, and Appellant said, "Yes." (Plea Tr. 4). There is no

contention with regard to the court's colloquy on any Crim.R. 11 right except the alleged failure to ensure the record adequately reflected an affirmative reply after the court asked if he understood that if he pled guilty he would be making a complete admission to the charges.

{¶24} The effect of the guilty plea as a complete admission to the charges in the plea agreement is an easy to comprehend concept. In fact, it is such a basic premise that the Supreme Court once observed that "a defendant is presumed to understand that he has completely admitted his guilt" where he enters a guilty plea "without asserting actual innocence" (i.e., where it is not an Alford plea). *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 19 (after finding the record, including the written plea and recitations by the state, indicated the defendant understood he was admitting to the crimes by pleading guilty). "In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial." *Id.* Here, there was not a failure to inform Appellant of the effect of the guilty plea. Rather, the argument is merely that the court did not sufficiently ensure the record reflected that he voiced his understanding of the information the court stated on the effect of the plea.

{¶25} Additionally, the written plea specifically said: "I further understand that my plea of guilty is a complete admission of my guilt as to the charge(s) and/or specification(s) contained herein." (Original all caps.) The court ensured Appellant could read and asked if Appellant read the written plea agreement with his attorney, and Appellant said that he did. (Plea Tr. 8). He also said he signed the written agreement voluntarily. (Plea Tr. 16).

{¶26} Although a written plea is not a substitute for the court's colloquy, it can be relevant to the trial court's determination of the defendant's understanding. *See, e.g., State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, ¶ 25 (even on a constitutional right, "an alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea, in determining whether the defendant was fully informed of the right in question"). *See also Griggs*, 103 Ohio St.3d 85, 814 N.E.2d 51 at ¶ 16 (finding the record indicated the defendant understood the effect of the plea, notwithstanding the court's failure to advise him that a guilty plea is a complete admission, where the defendant acknowledged voluntarily signing and understanding a plea form wherein he said he committed the offenses).

{¶27} In addition, the trial court said: "I've advised you of your statutory and constitutional rights and you indicated that you understood them and are hereby waiving them. Do you understand each and every one of these rights?" Appellant responded, "Yes." He then indicated that he had no questions regarding his rights. (Plea Tr. 15).

{¶28} At the close of the plea hearing, the court declared, "The court has fully advised the defendant of the effect of his plea pursuant to Crim.R. 11 and finds that the plea has been freely and voluntarily made with full knowledge of its consequences." The court said Appellant understood all of the rights explained to him and specifically concluded: "he understood the effect of his plea and that the court, upon acceptance, may proceed to

judgment and sentence." (Plea Tr. 17). This further suggests the court interpreted Appellant's one instance of nodding his response as nodding in the affirmative.

{¶29} Finally, we note the trial court said it watched a surveillance video of the events inside the victim's house, and saw Appellant approach the victim and shoot him, which made it appear he intended to go there to kill and rob the victim. (Sent.Tr. 10-11). Appellant received a substantial benefit by his plea agreement with dismissal of the three forms of aggravated murder, dismissal of the aggravated robbery and aggravated burglary offenses, and dismissal of the tampering with evidence offense (which was a third-degree felony).

{¶30} Appellant's brief states he did not clearly admit to criminal conduct at sentencing. This is apparently a recognition that courts have reviewed the sentencing transcript when considering whether the record demonstrates the defendant was prejudiced due to a plea issue. At the sentencing hearing less than a week after the plea, defense counsel said: Appellant had "always accepted responsibility"; he wanted to plead guilty throughout the year counsel represented him; he was insistent that he did not go to the victim's house with the prior intent to kill him; and the issue was always with the number of years being offered by the state. (Sent.Tr. 7-8). (He was originally charged with prior calculation and design aggravated murder.) Appellant confirmed counsel's disclosure, stating "it was never intended to go that way." He also said he was remorseful and hoped the victim's family could find comfort in the sentence knowing justice was served. (Sent.Tr. 9).

{¶31} In summary, we conclude the trial court complied with Crim.R. 11(C)(2)(b) by informing Appellant that a guilty plea was a complete admission to the charges and by determining that he understood this was the effect of his plea. Regardless, Appellant has failed to show prejudice. There is no indication Appellant would have refused to continue with the plea deal and would have risked trial on the original charges if the trial court had stopped after Appellant's head nod and repeated that a plea of guilty was a complete admission in order to evoke a verbal understanding of this basic statement.

Here, the Seventh District Court of Appeals reasonably determined that Mr. Oliver's plea was knowing and voluntary based on the totality of the circumstances, including but not limited to: (1) there is no dispute that the trial court addressed the defendant personally and informed him of every item listed in Crim.R.11(C)(2)(a)-(c), including that the guilty plea is a complete admission of the charges; Mr. Oliver verbally responded to indicate that he understood the court's advisement after every item *except one*; (2) the case had been pending against Mr. Oliver for over 2.5 years, there were multiple plea negotiating sessions, and counsel disclosed that he spoke to Mr. Oliver for two hours the day before the plea and an hour the day before that about the case and the

plea; (3) the trial court asked Mr. Oliver if he intended to withdraw his former plea of not guilty to the charges in the indictment and enter a plea of guilty to the amended charges, and Mr. Oliver responded "yes"; (4) the written plea agreement stated in bold capital letters: "I further understand that my plea of guilty is a complete admission of my guilt as to the charge(s) and/or specification(s) contained herein," the trial court confirmed that Mr. Oliver could read, and Mr. Oliver indicated that he reviewed the plea agreement with his attorney and voluntarily signed it; (5) in response to the trial court's statement that the trial court had advised Mr. Oliver of his statutory and constitutional rights, Mr. Oliver indicated he understood and waived every one of those rights and had no questions regarding his rights; (6) at the close of the change of plea hearing after the plea colloquy, the trial court stated that Mr. Oliver understood all of the rights explained to him, understood the effect of his plea, and that the court could proceed to judgment and sentence; (7) the trial court watched a surveillance video of the events inside the victim's house and saw Mr. Oliver approach the victim and shoot him, which made it appear he intended to go there and kill and rob the victim; (8) Mr. Oliver also received a substantial benefit by his plea agreement with dismissal of the three forms of aggravated murder, dismissal of the aggravated robbery and aggravated burglary offenses, and dismissal of the tampering with evidence offense; and (9) Mr. Oliver stated at his sentencing hearing that he was remorseful and hoped the victim's family could find comfort in the sentence knowing justice was served.

Applying AEDPA deference, the Seventh District Court of Appeals' holding is not contrary to or an unreasonable application of clearly established federal law. Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, I recommend that the Court find that Ground One lacks merit.

## V.     RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)].").

Mr. Oliver has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find this conclusion to be debatable, I recommend that no Certificate of Appealability issue in this case.

## VI.    RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Oliver's petition for writ of habeas corpus under 28 U.S.C. § 2254. I also RECOMMEND that the Court not grant him a Certificate of Appealability. Finally, I also recommend that Warden Harold May be substituted for Tim McConahay as the Respondent in this case.

Dated: November 22, 2024

_s/ Jennifer Dowdell Armstrong_
Jennifer Dowdell Armstrong
United States Magistrate Judge

## VII.   NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).